**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DUSTIN WAYNE MARTIN,**<br><br>**Defendant.** | **Case No. 26-CR-293-1-JFH** |

## OPINION AND ORDER

Before the Court is a Motion to Revoke Order Setting Conditions of Release ("Appeal") filed by the United States of America ("Government") Dkt. No. 27. In its Appeal, the Government seeks revocation of an order [Dkt. No. 26] entered by United States Magistrate Susan E. Huntsman setting conditions of release for Defendant Dustin Wayne Martin ("Defendant"). Defendant filed a response in opposition to the Appeal. Dkt. No. 32. For the following reasons, the Government's Appeal [Dkt. No. 27] is GRANTED.

## BACKGROUND

On January 5, 2026, Defendant was charged by indictment with: (1) one count of Aggravated Sexual Abuse of a Minor by Force in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, 2241(c); (2) one count of Sexual Abuse Without Consent in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, 2242(3); (3) two counts of Abusive Sexual Contact in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, 2244(a)(2); and (4) three counts of Abusive Sexual Contact with a Minor in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, 2244(a)(3). Dkt. No. 2. Specifically, the indictment alleges that between on or about September 27, 2014 and on or about June 27, 2025, Defendant sexually abused MV1, MV2, and MV3 on multiple occasions. Dkt. Nos. 3; 27. MV1, MV2, and MV3 are the daughters of Defendant

Karalee Pauline Thomas ("Thomas"), who is also charged in this case, for allegedly failing to protect MV1 from sexual abuse by Defendant. *Id.*; Dkt. No. 27 at 2-3. On August 6, 2026, Defendant made his initial appearance before Magistrate Judge Huntsman and was arraigned. Dkt. No. 8. The Government moved for detention, and a hearing was set for August 10, 2026. *Id.* Judge Huntsman ordered Defendant detained pending the detention hearing. Dkt. No. 9. After hearing proffer and argument from the parties on August 10, 2026, Judge Huntsman continued the detention hearing to August 14, 2026, to allow the pretrial services report to be verified.[1]

## I. The Government's Proffer

At the detention hearing, the Government proceeded by proffer, alleging as follows. Defendant dated and lived with Thomas for approximately eleven years. Dkt. No. 31 at 3. During most of that time, Thomas's daughters—MV1, MV2, and MV3—lived with the couple.[2] *Id.* at 3, 6, 8. In 2017, when MV3 was 16 years old, she ran away from home and was subsequently contacted by police. *Id.* at 3. MV3 told police that she would rather die than return home. *Id.* She explained that, beginning when she was 14 years old, Defendant engaged in sexually inappropriate conduct toward her. *Id.* Specifically, MV3 described Defendant commenting that she was "sexy" and "slutty," slapping her buttocks, groping her breasts, and exposing himself to her. *Id.* MV3 also stated that Defendant gave her a vibrator and thong underwear. *Id.* According to MV3, when she attempted to discuss Defendant's conduct with Thomas, Thomas either dismissed her concerns or became angry. *Id.* at 3-4. Following MV3's disclosure to police, the

---

[1] At the time of the August 10, 2026 detention hearing, the pretrial services report had not been verified due to a lack of contact information for Defendant's collateral contacts. Dkt. No. 30 at 25.

[2] Although MV2 and MV3 are now adults, they were minors when the offense conduct occurred. Dkt. No. 30 at 4-7.

Oklahoma Department of Human Services ("DHS") became involved. *Id.* at 4. Defendant admitted to DHS that he had slapped MV3's buttocks but stated that he did so in a nonsexual manner. *Id.* He also admitted to sending an inappropriate Facebook message to MV3 regarding her appearance but promised not to do so again. *Id.* Ultimately, DHS found the allegations of sexual misconduct to be unsubstantiated. *Id.*

In May 2018, when MV3 was 17 years old, she again disclosed Defendant's conduct to someone outside the home. *Id.* In addition to the conduct she had previously disclosed, MV3 reported that Defendant attempted to kiss her and asked her "if she was going to make him wait until she was 18 to have sex with her." *Id.* at 4-5. DHS was contacted again, and this time determined that the allegations were substantiated and removed MV3 from the home. MV1 and MV2, however, were not removed and remained in the home. *Id.*

In a later interview with law enforcement, MV2 confirmed that she had witnessed Defendant "groping" MV3 and slapping her buttocks. *Id.* She further stated that, after MV3 reported the abuse and moved out, Defendant began engaging in similar conduct toward her. *Id.* MV2 was 15 years old at the time. She described Defendant grabbing her buttocks, making inappropriate comments, and coercing her to show him photographs of her breasts. *Id.* at 7. MV2 also stated that Defendant made her change her clothes with her bedroom door open while he watched her. *Id.* Defendant would be in his boxer shorts as he observed MV2 changing, and, according to MV2, she could tell that Defendant had an erection. *Id.* MV2 recounted an incident that occurred on Thanksgiving Day, 2021.[3] MV2 reported that Defendant was drunk and repeatedly encouraged her to drink alcohol. *Id.* at 8. MV2 went to bed and put headphones on. *Id.* She was lying with her back to the door, so she did not hear Defendant enter her room. *Id.*

[3] MV2 was 18 years old when this incident occurred. Dkt. No. 30 at 7-8.

Defendant lay down on MV2's bed, placing his body behind hers. *Id.* MV2 could feel Defendant's erect penis against her buttocks. *Id.* Defendant began caressing her arms, and touched her breasts under her shirt. *Id.* MV2 kicked Defendant and fled. *Id.* According to MV2, when she told Thomas about Defendant's behavior, Thomas accused her of lying. *Id.* Shortly after the Thanksgiving incident, MV2 moved out. *Id.* MV1 remained in the home.

On June 29, 2025, MV2 received a text message from MV1 stating that Defendant had raped her on June 27, 2025. *Id.* at 8-9. MV2 shared this information with MV3, who reported it to the Pryor Police Department. *Id.* at 9. DHS was alerted. *Id.* MV1 was taken for an examination by a sexual assault nurse and was forensically interviewed. *Id.* MV1 reported that on June 27, 2025, Thomas was at the hospital with Thomas' mother who was terminally ill. *Id.* Defendant and MV1 were home alone. *Id.* Defendant instructed MV1 to shower and put on thong underwear. *Id.* MV1 showered but did not otherwise comply. *Id.* She put on her pajamas and began drying her hair. *Id.* Defendant entered MV1's room and said that he needed to talk to her. *Id.* MV1 thought he needed to talk to her about her grandmother's condition. *Id.* Defendant shut the door and started undressing MV1. *Id.* MV1 asked him to stop, to which Defendant replied, "Come on, it'll be fun." *Id.* at 9-10. Defendant then pushed MV1 onto her bed and performed oral sex on her. *Id.* at 10. He then moved MV1 to the floor, put a condom on, and raped her. *Id.* At some point, Defendant stopped and penetrated MV1 digitally. *Id.* When Defendant was "done," he removed the condom and left. *Id.* MV1 reported that in the year leading up to the rape, Defendant had started slapping her buttocks and trying to touch her breasts. *Id.* She also described him trying to coerce her into showing him her breasts. *Id.* According to MV1, after the rape, this conduct escalated. *Id.*

In an interview with police, Thomas stated that after MV1's disclosure, she confronted Defendant with the rape allegation and that Defendant admitted that he had done "something" with MV1. *Id.* at 10-11. Text messages retrieved from Defendant's phone showed that, following MV1's disclosure, Thomas asked Defendant why he "did what [he] did" and how he could claim to love her after hurting her and MV1. *Id.* at 11. Defendant did not deny the allegations but responded that "people make mistakes" and "good" people do "bad" things. *Id.* He then stated, "All I can say is I'm sorry." *Id.* Further, data regarding Defendant's internet search history showed that in the week following the rape, Defendant's internet searches included inquiries regarding: (1) the age of consent in Oklahoma; (2) the age of consent in the United States; (3) sex with a minor; and (4) statutory rape laws. *Id.*

## II. Defendant's Proffer

Defendant proffered the following facts: (1) he has resided in the community for 27 years; (2) he has owned and resided in the same home for 13 years; (3) he had worked at Xcaliber International for four months at the time of his arrest and may be able to return to work there if released; (4) his criminal history includes only one prior speeding ticket; and (5) he has remained in the community, with no allegations of misconduct or law violations since he learned of the investigation into the allegations of sexual abuse in July 2025. *Id.* at 11-12.

## III. Pretrial Services Report

The information in the Pretrial Service Report prepared by U.S. Probation (the "Probation Office") was verified by Defendant's sister, Jeani Fletcher. PTSR at 1. The report indicates that Defendant has lived in his Pryor, Oklahoma home since 2013 and in the community for the past 27 years. *Id.* at 1-2. According to the report, Defendant has been employed by Xcaliber International, LTD., LLC for the past three months and prior to that, by various companies since

2018. *Id.* at 2-3. Defendant was diagnosed with depression and anxiety in 2018 and is prescribed bupropion and duloxetine. *Id.* at 3. Defendant reported prior experimental/social use of alcohol, amphetamines, and cannabinoids. *Id.* He has one prior conviction for speeding in 2012. *Id.* at 6. Based on the nature of the offense conduct in this case (including the involvement of three minor victims), Defendant's mental health history, and Defendant's substance abuse history, the Probation Office determined that no condition or combination of conditions would reasonably assure the appearance of Defendant or the safety of the community. *Id.* at 5.

### IV. *Judge Huntsman's Order*

After hearing the proffers and arguments from both parties, Judge Huntsman ordered that Defendant be released pending trial. Dkt. No. 31 at 11. In her order, Judge Huntsman determined that Defendant rebutted the presumption that no condition or combination of conditions would reasonably assure Defendant's appearance by presenting evidence regarding Defendant's "lack of criminal history in his forty years of life to date, and lack of any allegations of remotely similar character before this case or during the fourteen months since" the allegations in this case arose. *Id*. at 3. While Judge Huntsman acknowledged the serious nature of the allegations in this case, she concluded that there was a combination of conditions that would reasonably "control for the danger presented" by Defendant's release. *Id.* at 5.

## AUTHORITY AND ANALYSIS

"If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The Court's review of a magistrate judge's detention order is *de novo*; thus, it must make "an independent determination of the proper pretrial detention or conditions for release." *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003) (citation omitted).

Under the Bail Reform Act of 1984, a court must order a criminal defendant's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Specifically, the Government must prove risk of flight by a preponderance of the evidence, and danger to any other person or the community by clear and convincing evidence. *Cisneros*, 328 F.3d at 616 (citations omitted).

To determine whether there are conditions that would "reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community[,]" the Court must consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). "[A]pplying and weighing the relative importance of the statutory factors requires an individualized determination that necessarily differs for each defendant depending on the circumstances of the case." *United States v. Bragg*, No. 21-5082, 2021 WL 6143720, at *2 (10th Cir. Dec. 30, 2021).

If the Court finds probable cause to believe the defendant committed one of the offenses listed at 18 U.S.C. § 3142(e)(3), then it is presumed—subject to rebuttal—"that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3)(A). Offenses involving minor victims under §§ 2241 and 2242 are offenses listed at 18 U.S.C. § 3142(e)(3)(A).

**DISCUSSION**

As an initial matter, based on the Court's review of the indictment [Dkt. No. 3] and the parties' proffers at the detention hearing, there is probable cause to believe that Defendant committed offenses involving minor victims under §§ 2241 and 2242. *See United States v. Silva*, 7 F.3d 1046 (10th Cir. 1993) (table) ("The grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more."); *see also United States v. Baker*, 349 F. Supp. 3d 1113, 1129 (D.N.M. 2018) (finding that the grand jury indictment was sufficient to establish the finding of probable cause that the defendant committed an offense involving a minor victim, giving rise to the presumption of dangerousness). Thus, the presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" applies. 18 U.S.C. § 3142(e)(3)(E).

"Once the presumption is invoked, the burden of production shifts to the defendant." *United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991). "The defendant's burden of production is not heavy, but some evidence must be produced." *Id.* at 1355. "Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain." *Id.* As discussed more fully below, the Court finds that Defendant presented evidence as to flight risk and danger to the community sufficient to

meet his burden of production. The Court notes, however, that the presumption of dangerousness will remain a factor for its consideration. *Id.*

**I. Consideration of the 18 U.S.C. § 3142(g) factors.**

**a. The Nature and Circumstances of the Offense Charged.**

Here, Defendant is alleged to have engaged in an ongoing and escalating course of inappropriate sexual contact with three minor victims living in his home. This alleged conduct continued and escalated over approximately ten years, culminating in the forcible rape of a fifteen-year-old victim. The charges arising from the alleged conduct include: (1) one count of sexual abuse of a minor by force, punishable by at least thirty years and up to life imprisonment; (2) one count of sexual abuse without consent, punishable by up to life imprisonment; (3) two counts of sexual contact with a minor without consent, punishable by up to three years of imprisonment per count; and (4) three counts of sexual contact with a minor, punishable by up to two years of imprisonment per count. The sustained and harmful nature of the offense conduct, the involvement of three minor victims, and the seriousness of the resulting charges weigh heavily in favor of detention.[4]

**b. The Weight of the Evidence.**

The evidence against Defendant includes: (1) the statements of MV1, MV2, and MV3 to DHS and law enforcement [Dkt. No. 30 at 3-11][5]; (2) Thomas' statement that when confronted with the allegation that he raped MV1, Defendant admitted that he "had done something" with

---

[4] Further, the Court notes that these are the types of offenses contemplated in the § 3142 statutory presumption that no condition or combination of conditions could reasonably assure Defendant's appearance and safety to any other person and the community set forth in § 3142 (e)(3)(E).

[5] Importantly, the offense conduct as described by all three victims was similar in many material respects, while escalating with each victim. Further, MV2's statement that she witnessed Defendant's abusive conduct with the other victims corroborates their accounts. Dkt. No. 30 at 7.

MV1 [*Id.* at 10-11]; (3) text messages between Thomas and Defendant in which Defendant did not deny raping MV1, but responded that "people make mistakes" and "good" people do "bad" things [*Id.*]; and (4) Defendant's internet search history indicating that in the week following the alleged rape of MV1, Defendant conducted searches regarding the age of consent, sex with a minor, and statutory rape laws [*Id.*]. The weight of this evidence is substantial. Accordingly, this factor weighs in favor of detention.

**c. The History and Characteristics of the Person.**

The Pretrial Services Report indicates that Defendant has ties to the community and had steady employment before he was arrested in connection with the charges in this case. PTSR at 1-3. Further, Defendant has minimal criminal history, including only one conviction for speeding. *Id.* at 6. Although Defendant has some history of mental health issues, it appears that those issues are being treated. *Id.* at 3. Defendant's history of substance use is of some concern, especially in light of MV2's statement regarding the incident of sexual contact that occurred while Defendant was drunk. However, the Pretrial Services Report did not indicate that ongoing substance abuse was a concern. Neither party presented evidence regarding Defendant's history and characteristics beyond what is contained in the Pretrial Services Report. As a whole, this factor weighs in favor of release.

**d. The Nature and Seriousness of the Danger to any Person or the Community.**

Defendant poses a danger to the community, particularly to minors. The pervasive nature of the offense conduct, coupled with the fact that it persisted even after DHS became involved and removed MV3 from the home, is of grave concern. Further, not only did the conduct persist, but it escalated from inappropriate touching outside of clothing and inappropriate comments to MV3, to touching under the clothing and attempts to obtain explicit photographs from MV2, and finally

to the forcible rape of MV1. Although Defendant points out that there have been no new allegations of misconduct in the fourteen months he has remained in the community after the instant allegations arose, the Government correctly notes that child sexual abuse is not always immediately disclosed. The mere fact that no allegations have yet surfaced does not necessarily establish that no additional misconduct has occurred.

To the extent that Defendant argues that "years of successful enforcement of sex offender rules and conditions by the United States Probation Office on a large number of individuals is clear evidence" that the same conditions are adequate to reasonably ensure the safety of any other person and the community here [Dkt. No. 32 at 2], the Court is not persuaded. While the Court recognizes that many individuals are successfully supervised under such conditions, the record does not establish that such conditions will adequately address the danger presented in this case. As with any condition or combination of conditions, the effectiveness of supervision depends upon the supervisee's willingness to comply with the conditions imposed. Here, the ongoing pattern of conduct, despite the intervention of authorities, is particularly troubling and raises concerns about Defendant's willingness to comply with conditions if released.

**CONCLUSION**

Having conducted a *de novo* review, the Court finds that although Defendant rebutted the presumption under 18 U.S.C. § 3142(e)(3), the Government showed by clear and convincing evidence that Defendant poses a danger to the community, and no condition or combination of conditions will alleviate this risk. Accordingly, Defendant will be detained pending trial.

IT IS THEREFORE ORDERED that the Government's Motion to Revoke Order Setting Conditions of Release [Dkt. No. 27] is GRANTED and the Order Setting Conditions of Release [Dkt. No. 26] is REVERSED.

IT IS FURTHER ORDERED that that Defendant shall be detained pending trial. Defendant is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. Defendant must be afforded a reasonable opportunity to consult privately with defense counsel. On order of the United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver Defendant to the United States Marshal for a court appearance.

Dated this 21st day of August 2026.

JOHN F. HEIL, III
CHIEF UNITED STATES DISTRICT JUDGE